UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
Fort Lauderdale Division
www.flsb.uscourts.gov

In re:                                    Case No. 15-26604-BKC-JKO

KANOL ISIDORE and KATIA ISIDORE,          Chapter 11

     Debtors.
_____/

## **PLAN OF REORGANIZATION OF KANOL ISIDORE AND KATIA ISIDORE**

**Submitted on July 17, 2017 by:**

JONATHAN S. LEIDERMAN, ESQ.
jsl@lsaslaw.com
Florida Bar No. 0029022
LEIDERMAN SHELOMITH ALEXANDER +
SOMODEVILLA, PLLC
Attorneys for the Debtors
2699 Stirling Road, Suite C401
Fort Lauderdale, Florida 33312
Telephone: (954) 920-5355
Facsimile: (954) 920-5371

## ARTICLE I
### SUMMARY

This Plan of Reorganization (the "Plan") under Chapter 11 of the Bankruptcy Code (the "Code") proposes to pay creditors of Kanol Isidore and Katia Isidore (the "Debtors") from the following sources: (a) the Debtors' income through their company, 24/7 Bail Bonds LLC ("Bail Bonds"); (b) the Debtors' income through their company, K N I Auto Sales LLC ("Auto Sales"); (c) the Debtors' income through their company, Isidore Corporation ("Isidore Corp"); (d) rental income from the Debtors' investment real properties located at 1272-1274 NW 101 St, Miami, FL 33147-1849, 763-765 NW 108 St, Miami, FL 33168-2129, 767-769 NW 108 St, Miami, FL 33168-2129, and 774-776 NW 108 St, Miami, FL 33168-2130; and (e) the Debtors' income received from United Realty Group, Inc.

This Plan provides for 14 classes of secured claims, 3 classes of unsecured priority claims, 1 class of general unsecured (non-dischargeable) claims, 1 class of general unsecured (dischargeable) claims, and 1 class of equity security holders. Unsecured creditors holding allowed claims will receive distributions, which the proponent of this Plan has valued at approximately 13.6254 cents on the dollar. This Plan also provides for the payment of administrative claims in full on the Effective Date of this Plan, or upon such other terms as agreed to between the Debtors and the administrative claimant(s).

All creditors and equity security holders should refer to Articles II through V of this Plan for information regarding the precise treatment of their claim. A Disclosure Statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan. **Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

## ARTICLE II
### TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, U.S. TRUSTEES FEES AND PRIORITY TAX CLAIMS

2.01   Unclassified Claims.   Under 11 U.S.C. § 1123(a)(1), administrative expense claims and priority tax claims (other than 11 U.S.C. § 507(a)(8) claims) are not in classes. However, treatment of any administrative expense claims that are not paid in full on the Effective Date of this Plan is set forth below.

2.02   Administrative Expense Claims.   Each holder of an administrative expense claim allowed under 11 U.S.C. § 503 will be paid in full on the Effective Date of this Plan (as defined in Article VII), in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtors. Such administrative expense claims include any post-petition escrow advances made by any secured creditor(s). The Debtors request that the Court set an administrative claims bar date of fifteen (15) days after the date of confirmation of this Plan, unless an earlier date has been set by the Court.

2.03   Priority Tax Claims.   Each holder of a priority tax claim will be paid either in full on the Effective Date of this Plan, or over a term of sixty (60) months, as further set forth below.

2.04   United States Trustee Fees.   All fees required to be paid by 28 U.S.C. §1930(a)(6) (U.S. Trustee Fees) will accrue and be timely paid until the case is closed,

dismissed, or converted to another chapter of the Code. Any U.S. Trustee Fees owed on or before the Effective Date of this Plan will be paid on the Effective Date.

The Debtors shall pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6), through the date of confirmation of this Plan, within fourteen (14) business days of entry of Order confirming this Plan. The Reorganized Debtors will file with the Bankruptcy Court post-confirmation Quarterly Operating Reports and pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6) for post-confirmation periods within the time period set forth in 28 U.S.C. § 1930(a)(6), based upon all post-confirmation disbursements, until the earlier of the closing of this case by the issuance of a Final Decree by the Bankruptcy Court, or upon the entry of an Order by the Bankruptcy Court dismissing this case or converting this case to another chapter under the United States Bankruptcy Code.

## ARTICLE III
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

3.01    Claims and interests shall be treated as follows under this Plan:

Classified Claims:

| Class | Impairment | Treatment |
|-------|-----------|-----------|
| Class 1A – Unsecured Priority Claim of the Internal Revenue Service (Claim # 6) **Total priority claim amount: $43,996.54** | Unimpaired | Class 1A, the Unsecured Priority Claim of the Internal Revenue Service, in the amount of $43,996.54 (or such other amount as determined by the Court or agreed to between the parties), is unimpaired by this Plan. This claim is comprised of 2011 – 2014 Federal Income Taxes, 2014 Federal Excise Taxes, as well as any other subsequent tax years in which a liability exists to the Internal Revenue Service. The Internal Revenue Service will be paid in full (the full amount of its allowed unsecured priority claim), plus 3.00% interest, over the next 39 months (60 months from the Petition Date), in equal monthly payments, which will begin on the first day of the month following the Effective Date of this Plan, and continue on the first day of every month thereafter. Furthermore, future federal income taxes will be paid in the ordinary course. |
| Class 1B – Priority Unsecured Claims of Real Property Tenants **Total priority unsecured claims: $6,930.00** | Unimpaired | Class 1B consists of all allowed priority unsecured claims of Real Property Tenants who are owed security deposits. Upon the expiration of the unexpired leases described herein (or such other unexpired leases that arose after the Petition Date), the Debtors may become obligated to repay their tenants their security deposits, pursuant to applicable law. Upon information and belief, the security deposits are: (a) 1272 NW 101 St, Miami, FL 33147-1849 ($900.00); (b) 1274 NW 101 St, Miami, FL 33147-1849 ($850.00); (c) 763 NW 108 St, Miami, FL 33168-2129 ($800.00); (d) 765 NW 108 St, Miami, FL 33168-2129 ($800.00); (e) 767 NW 108 St, Miami, FL 33168-2129 ($900.00); (f) 769 NW 108 St, Miami, FL 33168-2129 ($1,030.00); (g) 774 NW 108 St, Miami, FL 33168-2130 ($750.00); and (h) 776 NW 108 St, Miami, FL |

| | | |
|---|---|---|
| | | 33168-2130 ($900.00). Upon such time that the Debtors become obligated to pay their tenants these security deposits, such security deposits will be repaid in full. The Debtors shall set aside a reserve for Class 1B Creditors, so that these amounts can be paid on a timely basis upon such expiration of the leases described above. |
| Class 1C – Other Priority Claims | Unimpaired | Other than set forth above, no other priority claims have been scheduled by the Debtors and the Debtors do not believe that any other priority claims exist. However, in the event that it is determined by the Court that any additional priority claims do exist, then each holder of a Class 1C Priority Claim will be paid in full, over 60 months from the Effective Date, in 20 equal quarterly payments, which will begin on the first day of the month following the Effective Date of this Plan, and continue on the first day of every quarter thereafter. |
| Class 2A – Secured Claim of Wells Fargo Bank, N.A. (first mortgage on homestead property) (Claim # 9)<br><br>**Total claim amount: $872,519.64 (secured = $872,519.64; unsecured = $0.00)** | Unimpaired | Class 2A, the Secured Claim of Wells Fargo Bank, N.A. (first mortgage on homestead property), is unimpaired by this Plan. This claim is secured by the real property located at 4100 Triple Crown Ct, Davie, FL 33330 (the "4100 Property"), which is the Debtors' homestead/primary residence. The Debtors are current on their mortgage payments to the Claimant.<br><br>Accordingly, as to treatment to the Claimant pursuant to this Plan, this claim will be paid pursuant to the note, mortgage, and any other loan documents entered into between the Claimant and the Debtors, and will not be modified or otherwise altered by virtue of this bankruptcy proceeding, other than through the express consent of the Claimant. The Claimant will retain its lien on the 4100 Property during such time that the Debtors remain the owner of such property. The Claimant will not be entitled to a Class 10 General Unsecured Claim, as its claim will be deemed fully-secured. |
| Class 2B – Secured Claim of Grove Creek Homeowners Association, Inc. (homeowner's association fees on homestead property)<br><br>**Total claim amount: $0.00 (secured = $0.00; unsecured = $0.00)** | Impaired | Class 2B, the Secured Claim of Grove Creek Homeowners Association, Inc. (homeowner's association fees on homestead property), is impaired by this Plan. This claim is secured by the 4100 Property.<br><br>As to any association fees that remain due and payable as of the Effective Date of this Plan, the Debtors will pay such claim, in full, over 60 months, in equal monthly payments with no interest, beginning on the first day of the month following the Effective Date of this Plan, and continuing on the first day of every month thereafter.<br><br>In the event of any default in the aforementioned payments, the Claimant will be entitled to exercise any and all *in rem* remedies, as its claim is fully-secured, in accordance with ¶ 3.03 below. However, in such instance, the Claimant will not be entitled to any *in personam* relief.<br><br>The Claimant shall have 30 days after the Effective Date of the Plan to inform the Debtors, through counsel, of the amount of such claim, or else such claim shall be waived. Furthermore, the Debtors shall remain obligated for any |

|  |  | homeowner's association fees that arise after the Effective Date of this Plan. |
|---|---|---|
| **Class 3A – Secured Claim of McCormick 106, LLC (first mortgage on investment property) (Claim # 11)**<br><br>**Total claim amount: $335,604.27 (secured = $160,000.00; unsecured = $175,604.27)** | Impaired | Class 3A, the Secured Claim of McCormick 106, LLC (first mortgage on investment property), is impaired by this Plan. This claim is secured by the investment real property located at 1272-1849 NW 101 St, Miami, FL 33147-1849 (the "1272-1274 Property").  Pursuant to Court order [ECF No. 134], this claim was reclassified as an allowed secured claim in the amount of $160,000.00, and as an allowed unsecured claim in the amount of $175,604.27. |
|  |  | The secured claim will be paid at the rate of 4.00% over 30 years (360 months), which will result in equal monthly principal and interest payments of $764.00, beginning on March 1, 2016, and continuing on the first day of every month thereafter, with no balloon payment.  Taxes and insurance shall not be escrowed and shall be the responsibility of the Debtors.  The adequate protection payments made to the Claimant during the pendency of this proceeding, in the amount of $764.00 per month, shall be applied to principal, as set forth above, such that the starting date for the above-referenced payments shall be March 1, 2016.  Payments shall be made to McCormick 106, LLC, c/o BSI Financial Services, POB 660605, Dallas, TX 75266-0605, or to such other address provided by the Claimant to the Debtors' counsel. |
|  |  | To the extent that the Debtors and the Claimant agree (or that the Court determines) that the Claimant has made any post-petition escrow disbursements for real estate taxes and/or insurance, which shall be an administrative claim, the Debtors shall reimburse the Claimant for such post-petition escrow disbursements, at the rate of 0% over 60 months from the Effective Date of this Plan, in equal monthly payments, or upon such other terms as agreed to between the Debtors and the Claimant. |
|  |  | The Claimant will retain its lien on the subject property during the time that payments are made.  The allowed undersecured claim, in the amount of $175,604.27, will be paid in accordance with Class 10 unsecured creditors below. |
| **Class 3B – Secured Claim of Miami-Dade County Tax Collector (2015 real estate taxes on investment property) (Claim # 3)**<br><br>**Total claim amount: $3,465.92 (secured = $3,465.92; unsecured = $0.00)** | Impaired | Class 3B, the Secured Claim of Miami-Dade County Tax Collector (2015 real estate taxes on investment property), is impaired by this Plan.  The claim is secured by the investment real property located at 1272-1274 NW 101 St, Miami, FL 33147-1849 (the "1272-1274 Property"). |
|  |  | The secured claim will be paid at the rate of 18.00% over 5 years (60 months), which will result in 20 equal quarterly principal and interest payments of $266.45, beginning on the first day of the month following the Effective Date of this Plan, and continuing on the first day of every quarter thereafter. |
|  |  | Furthermore, future real estate taxes will be paid in the |

| | | ordinary course. |
|---|---|---|
| Class 4A – Secured Claim of BankUnited, N.A. (first mortgage on investment property) (Claim # 5)<br><br>**Total claim amount: $183,676.30 (secured = $150,000.00; unsecured = $33,676.30)** | Impaired | Class 4A, the Secured Claim of BankUnited, N.A. (first mortgage on investment property), is impaired by this Plan. This claim is secured by the investment real property located at 763-765 NW 108 St, Miami, FL 33168-2129 (the "763-765 Property"). Pursuant to Court order [ECF No. 136], this claim was reclassified as an allowed secured claim in the amount of $150,000.00, and as an allowed unsecured claim in the amount of $33,676.30.<br><br>The secured claim will be paid at the rate of 5.25% over 30 years (360 months), which will result in equal monthly principal and interest payments of $828.31, beginning on March 1, 2016, and continuing on the first day of every month thereafter, with no balloon payment. In addition, the Debtors shall make escrow payments (taxes and insurance) of $445.90 per month. The Claimant shall continue to escrow real estate taxes and insurance on the subject property. The escrow component of the monthly payment is subject to reanalysis and adjustment after the 2015 taxes have been paid (which were to be timely paid by the Debtors by March 31, 2016). The adequate protection payments made to the Claimant during the pendency of this proceeding, in the amount of $828.31 per month, shall be applied to principal, as set forth above, such that the starting date for the above-referenced payments shall be March 1, 2016. Payments shall be made to BankUnited, N.A., 7815 NW 148 St, Miami Lakes, FL 33016, or to such other address provided by the Claimant to the Debtors' counsel.<br><br>To the extent that the Debtors and the Claimant agree (or that the Court determines) that the Claimant has made any post-petition escrow disbursements for real estate taxes and/or insurance, which shall be an administrative claim, the Debtors shall reimburse the Claimant for such post-petition escrow disbursements, at the rate of 0% over 60 months from the Effective Date of this Plan, in equal monthly payments, or upon such other terms as agreed to between the Debtors and the Claimant.<br><br>The Claimant will retain its lien on the subject property during the time that payments are made. The allowed undersecured claim, in the amount of $33,676.30, will be paid in accordance with Class 10 unsecured creditors below. |
| Class 4B – Secured Claim of Miami-Dade County Tax Collector (2015 real estate taxes on investment property) (Claim # 3)<br><br>**Total claim amount: $2,935.97 (secured = $2,935.97; unsecured** | Impaired | Class 4B, the Secured Claim of Miami-Dade County Tax Collector (2015 real estate taxes on investment property), is impaired by this Plan. The claim is secured by the investment real property located at 763-765 NW 108 St, Miami, FL 33168-2129 (the "763-765 Property").<br><br>The secured claim will be paid at the rate of 18.00% over 5 years (60 months), which will result in 20 equal quarterly principal and interest payments of $225.71, beginning on the first day of the month following the Effective Date of this Plan, and continuing on the first day of every quarter thereafter. |

| | | |
|---|---|---|
| = $0.00) | | Furthermore, future real estate taxes will be paid in the ordinary course. |
| Class 5A – Secured Claim of Bank of America, N.A. (home equity line of credit on investment property) (Claim # 12)<br><br>**Total claim amount: $125,175.21 (secured = $125,175.21; unsecured = $0.00)** | Impaired | Class 5A, the Secured Claim of Bank of America, N.A. (home equity line of credit on investment property), is impaired by this Plan.  This claim is secured by the investment real property located at 767-769 NW 108 St, Miami, FL 33168-2129.  Pursuant to Court order [ECF No. 80], this claim was classified as an allowed secured claim in the amount of $110,179.00.  However, the Claimant had yet to file its Proof of Claim.  Claimant timely filed its Proof of Claim on February 4, 2016, which indicated that its secured claim is actually for $125,175.21.  Since ECF No. 80 valued the 767-769 Property at $136,493.00, Claimant has an allowed secured claim in the amount of $125,175.21. |
| | | The secured claim will initially be paid at the rate of 3.49% over 30 years (360 months), which will result in equal monthly principal and interest payments of $494.00, beginning on December 1, 2015, and continuing on the first day of every month thereafter, until the 1st of the month preceding the Effective Date of this Plan, with no balloon payment.  Starting on the 1st of the month following the Effective Date of this Plan, the secured claim will be paid at the rate of 3.49% over 30 years (360 months), which will result in equal monthly principal and interest payments of $561.39, beginning on the 1st of the month following the Effective Date of this Plan, and continuing on the first day of every month thereafter, with no balloon payment.  Taxes and insurance shall not be escrowed and shall be the responsibility of the Debtors.  The adequate protection payments made to the Claimant during the pendency of this proceeding, in the amount of $494.00 per month, shall be applied to principal, as set forth above, such that the starting date for the above-referenced payments shall be December 1, 2015.  Payments shall be made to Bank of America, N.A., POB 660933, Dallas, TX 75266-0933, or to such other address provided by the Claimant to the Debtors' counsel. |
| | | To the extent that the Debtors and the Claimant agree (or that the Court determines) that the Claimant has made any post-petition escrow disbursements for real estate taxes and/or insurance, which shall be an administrative claim, the Debtors shall reimburse the Claimant for such post-petition escrow disbursements, at the rate of 0% over 60 months from the Effective Date of this Plan, in equal monthly payments, or upon such other terms as agreed to between the Debtors and the Claimant. |
| | | The Claimant will retain its lien on the subject property during the time that payments are made. |
| Class 5B – Secured Claim of BankUnited, N.A. (home equity line of credit on investment | Impaired | Class 5B, the Secured Claim of BankUnited, N.A. (home equity line of credit on investment property), is impaired by this Plan.  This claim is secured by the investment real property located at 767-769 NW 108 St, Miami, FL 33168-2129 (the "767-769 Property").  Pursuant to Court order [ECF |

| | | |
|---|---|---|
| property) (Claim # 7)<br><br>**Total claim amount:<br>$195,941.26 (secured<br>= $26,314.00;<br>unsecured =<br>$169,627.26)** | | No. 80], this claim was reclassified as an allowed secured claim in the amount of $26,314.00, and as an allowed unsecured claim in the amount of $169,627.26. |
| | | The secured claim will be paid at the rate of 4.25% over 30 years (360 months), which will result in equal monthly principal and interest payments of $129.00, beginning on December 1, 2015, and continuing on the first day of every month thereafter, with no balloon payment.  Taxes and insurance shall not be escrowed and shall be the responsibility of the Debtors.  The adequate protection payments made to the Claimant during the pendency of this proceeding, in the amount of $129.00 per month, shall be applied to principal, as set forth above, such that the starting date for the above-referenced payments shall be December 1, 2015.  Payments shall be made to BankUnited, N.A., 7815 NW 148 St, Miami Lakes, FL 33016, or to such other address provided by the Claimant to the Debtors' counsel. |
| | | To the extent that the Debtors and the Claimant agree (or that the Court determines) that the Claimant has made any post-petition escrow disbursements for real estate taxes and/or insurance, which shall be an administrative claim, the Debtors shall reimburse the Claimant for such post-petition escrow disbursements, at the rate of 0% over 60 months from the Effective Date of this Plan, in equal monthly payments, or upon such other terms as agreed to between the Debtors and the Claimant. |
| | | The Claimant will retain its lien on the subject property during the time that payments are made.  The allowed undersecured claim, in the amount of $169,627.26, will be paid in accordance with Class 10 unsecured creditors below. |
| Class 5C – Secured Claim of Miami-Dade County Tax Collector (2015 real estate taxes on investment property) (Claim # 3)<br><br>**Total claim amount:<br>$3,069.38 (secured =<br>$3,069.38; unsecured<br>= $0.00)** | Impaired | Class 5C, the Secured Claim of Miami-Dade County Tax Collector (2015 real estate taxes on investment property), is impaired by this Plan.  The claim is secured by the investment real property located at 767-769 NW 108 St, Miami, FL 33168-2129 (the "767-769 Property"). |
| | | The secured claim will be paid at the rate of 18.00% over 5 years (60 months), which will result in 20 equal quarterly principal and interest payments of $235.96, beginning on the first day of the month following the Effective Date of this Plan, and continuing on the first day of every quarter thereafter. |
| | | Furthermore, future real estate taxes will be paid in the ordinary course. |
| Class 6A – Secured Claim of Wells Fargo Bank, N.A. (home equity line of credit on investment property) (Claim # 10)<br><br>**Total claim amount:<br>$259,617.18 (secured** | Impaired | Class 6A, the Secured Claim of Wells Fargo Bank, N.A. (home equity line of credit on investment property), is impaired by this Plan.  This claim is secured by the investment real property located at 774-776 NW 108 St, Miami, FL 33168-2130 (the "774-776 Property").  Pursuant to Court order [ECF No. 82], this claim was reclassified as an allowed secured claim in the amount of $117,615.00, and as an allowed unsecured claim in the amount of $142,002.18. |

| = $117,615.00; unsecured = $142,002.18) | | The secured claim will be paid at the rate of 5.25% over 30 years (360 months), which will result in equal monthly principal and interest payments of $649.00, beginning on December 1, 2015, and continuing on the first day of every month thereafter, with no balloon payment.  Taxes and insurance shall not be escrowed and shall be the responsibility of the Debtors.  The adequate protection payments made to the Claimant during the pendency of this proceeding, in the amount of $649.00 per month, shall be applied to principal, as set forth above, such that the starting date for the above-referenced payments shall be December 1, 2015.  Payments shall be made to Wells Fargo Bank, N.A., c/o Wells Fargo Operations Center, POB 31557 B6955-01B, Billings, MT 59107, or to such other address provided by the Claimant to the Debtors' counsel. |
| | | To the extent that the Debtors and the Claimant agree (or that the Court determines) that the Claimant has made any post-petition escrow disbursements for real estate taxes and/or insurance, which shall be an administrative claim, the Debtors shall reimburse the Claimant for such post-petition escrow disbursements, at the rate of 0% over 60 months from the Effective Date of this Plan, in equal monthly payments, or upon such other terms as agreed to between the Debtors and the Claimant. |
| | | The Claimant will retain its lien on the subject property during the time that payments are made.  The allowed undersecured claim, in the amount of $142,002.18, will be paid in accordance with Class 10 unsecured creditors below. |
| Class 6B – Secured Claim of TLGFY LLC (2014 real estate taxes on investment property)<br><br>**Total claim amount: $3,218.88 (secured = $3,218.88; unsecured = $0.00)** | Impaired | Class 6B, the Secured Claim of TLGFY LLC (2014 real estate taxes on investment property), is impaired by this Plan.  The claim is secured by the investment real property located at 774-776 NW 108 St, Miami, FL 33168-2130 (the "774-776 Property"). |
| | | The secured claim will be paid at the rate of 18.00% over 5 years (60 months), which will result in 20 equal quarterly principal and interest payments of $247.46, beginning on the first day of the month following the Effective Date of this Plan, and continuing on the first day of every quarter thereafter. |
| | | Furthermore, future real estate taxes will be paid in the ordinary course. |
| Class 6C – Secured Claim of Miami-Dade County Tax Collector (2015 real estate taxes on investment property) (Claim # 3)<br><br>**Total claim amount: $2,770.24 (secured =** | Impaired | Class 6C, the Secured Claim of Miami-Dade County Tax Collector (2015 real estate taxes on investment property), is impaired by this Plan.  The claim is secured by the investment real property located at 774-776 NW 108 St, Miami, FL 33168-2130 (the "774-776 Property"). |
| | | The secured claim will be paid at the rate of 18.00% over 5 years (60 months), which will result in 20 equal quarterly principal and interest payments of $212.97, beginning on the first day of the month following the Effective Date of this Plan, |

| | | |
|---|---|---|
| $2,770.24; unsecured = $0.00) | | and continuing on the first day of every quarter thereafter.<br><br>Furthermore, future real estate taxes will be paid in the ordinary course. |
| Class 7 – Secured Claim of Santander Consumer USA Inc. (security interest on 2014 Toyota Tacoma Double Cab PreRunner 2WD V6) (Claim # 14)<br><br>**Total claim amount: $23,134.54 (secured = $15,000.00; unsecured = $8,134.54)** | Impaired | Class 7, the Secured Claim of Santander Consumer USA Inc. (security interest on 2014 Toyota Tacoma Double Cab PreRunner 2WD V6), is impaired by this Plan.  This claim is secured by the Debtor's 2014 Toyota Tacoma Double Cab PreRunner 2WD V6 (VIN # 5TFJU4GN3EX052271) (the "Vehicle").  Pursuant to Court order [ECF No. 79], this claim was reclassified as an allowed secured claim in the amount of $15,000.00, and as an allowed unsecured claim in the amount of $8,134.54.<br><br>The secured claim will be paid at the rate of 5.25% over 5 years (60 months), which will result in equal monthly principal and interest payments of $285.00, beginning on December 1, 2015, and continuing on the first day of every month thereafter, with no balloon payment.  The adequate protection payments made to the Claimant during the pendency of this proceeding, in the amount of $285.00 per month, shall be applied to principal, as set forth above, such that the starting date for the above-referenced payments shall be December 1, 2015.  Payments shall be made to Santander Consumer USA Inc., POB 560284, Dallas, TX 75356, or to such other address provided by the Claimant to the Debtors' counsel.<br><br>The Claimant will retain its lien on the subject property during the time that payments are made.  The allowed undersecured claim, in the amount of $8,134.54, will be paid in accordance with Class 10 unsecured creditors below. |
| Class 8 – Secured Claim of Santander Consumer USA Inc. (security interest on 2007 Toyota FJ Cruiser-V6 Utility 4D 4WD) (Claim # 13)<br><br>**Total claim amount: $19,790.83 (secured = $8,000.00; unsecured = $11,790.83)** | Impaired | Class 8, the Secured Claim of Santander Consumer USA Inc. (security interest on 2007 Toyota FJ Cruiser-V6 Utility 4D 4WD), is impaired by this Plan.  This claim is secured by the Joint Debtor's 2007 Toyota FJ Cruiser-V6 Utility 4D 4WD (VIN # JTEBU11F27C0Z3839) (the "Vehicle").  Pursuant to Court order [ECF No. 81], this claim was reclassified as an allowed secured claim in the amount of $8,000.00, and as an allowed unsecured claim in the amount of $11,790.83.<br><br>The secured claim will be paid at the rate of 5.25% over 5 years (60 months), which will result in equal monthly principal and interest payments of $152.00, beginning on December 1, 2015, and continuing on the first day of every month thereafter, with no balloon payment.  The adequate protection payments made to the Claimant during the pendency of this proceeding, in the amount of $152.00 per month, shall be applied to principal, as set forth above, such that the starting date for the above-referenced payments shall be December 1, 2015.  Payments shall be made to Santander Consumer USA Inc., POB 560284, Dallas, TX 75356, or to such other address provided by the Claimant to the Debtors' counsel.<br><br>The Claimant will retain its lien on the subject property during the time that payments are made.  The allowed undersecured claim, in the amount of $11,790.83, will be paid in |

| | | accordance with Class 10 unsecured creditors below. |
|---|---|---|
| Class 9 – General Unsecured (Non-Dischargeable) Claim(s) of the US Department of Education (Claim # 8)<br><br>**Total claim amount: $36,692.13** | Unimpaired | Class 9, the General Unsecured (Non-Dischargeable) Claim(s) of the US Department of Education, is unimpaired by this Plan. This claim is comprised of the Joint Debtor's federal student loans (the "Student Loans") and are non-dischargeable, pursuant to 11 U.S.C. § 523(a)(8).<br><br>The Student Loans will be paid pursuant to the underlying student loan documents entered into between the Claimant and the Joint Debtor, and will not be modified or otherwise altered by virtue of this bankruptcy proceeding, as the Student Loans are non-dischargeable.<br><br>The Joint Debtor may, at her option, seek to pay the Claimant through any federal repayment plan offered by the United States Department of Education, including the Income-Based Repayment Plan (IBR). As the Claimant will be paid in full as a separately-classified general unsecured creditor, the Claimant will not participate in any distribution to Class 10 creditors. |
| Class 10 - General Unsecured Creditors With Dischargeable Claims<br><br>**Total Unsecured Claims: $630,336.72** | Impaired | Class 10 consists of all allowed unsecured general claims with dischargeable claims, including undersecured claims. The Class 10 Creditors shall share *pro rata* in a total distribution in the amount of $85,886.00 (the "Plan Payments").<br><br>Any allowed unsecured or undersecured general claimant scheduled to receive a total distribution of $250.00 or less shall be paid in a lump sum within sixty (60) days from the Effective Date. The Debtors estimate that the lump sum payment(s) will total $42.95.<br><br>Any allowed unsecured or undersecured general claimant scheduled to receive a total distribution of more than $250.00 shall receive payment over 5 years from the first day of the month following the Effective Date, in 20 quarterly payments totaling $4,292.16 per payment, with the first payment due on the first day of the month following the Effective Date of this Plan, and continuing on the first day of every quarter thereafter (the "Plan Period").<br><br>The specific creditors to be paid under this Plan (as well as a payment schedule) are set forth in the attached Exhibit "A". Unsecured creditors will be receiving a distribution of approximately 13.6254% of their allowed claim(s). |
| Class 11 - Equity Interest of the Debtors | Unimpaired | Class 11 consists of the Debtors' interest in property of the estate, which is retained under this Plan. The Debtors have committed the value of 5 years of their projected household net disposable income toward funding this Plan, and have otherwise met all of the requirements under the Bankruptcy Code. Class 11 is presumed to accept this Plan and not entitled to vote. |

Unclassified Claims:

| | |
|---|---|
| Administrative Professional Fees and Costs of Debtors' Attorneys[1] | The administrative professional fees and costs of the Debtors' attorneys are anticipated to be $20,000.00, exclusive of any retainer(s) previously paid. Any such fees and costs are subject to final allowance by the Court, after the filing of appropriate fee application(s) and notice and hearing.  The exact amount of such fees and costs will be determined at the Confirmation Hearing of this Plan.  Such fees and costs shall be paid by virtue of an initial payment in the amount of $8,000.00, due on the Effective Date of this Plan, followed by equal monthly payments of $500.00 per month for 3 months, followed by equal monthly payments of $250.00 per month until such administrative professional fees, costs, and allowable interest are paid in full. Any administrative professional fees, costs, and allowable interest that are incurred post-confirmation are not included herein. |
| Administrative Professional Fees and Costs of Debtors' Accountant<br><br>(Dinnall Fyne & Company, Inc.) | The administrative professional fees and costs of the Debtors' accountant are anticipated to be $10,000.00, exclusive of any retainer(s) previously paid. Any such fees and costs are subject to final allowance by the Court, after the filing of appropriate fee application(s) and notice and hearing.  The exact amount of such fees and costs will be determined at the Confirmation Hearing of this Plan.  Such fees and costs shall be paid by virtue of an initial payment in the amount of $4,000.00, due on the Effective Date of this Plan, followed by equal monthly payments of $500.00 per month for 3 months, followed by equal monthly payments of $250.00 per month until such administrative professional fees, costs, and allowable interest are paid in full. Any administrative professional fees, costs, and allowable interest that are incurred post-confirmation are not included herein. |

3.02    Treatment Upon 11 U.S.C. § 1111(b) Election.  Pursuant to 11 U.S.C. § 1111(b), certain secured creditors (and/or classes of creditors) have the right to elect that its/their claim(s) is a secured claim to the extent that such claim is allowed, notwithstanding 11 U.S.C. § 506 (the "§ 1111(b) Election").  Therefore, any secured creditor that has the right to make the § 1111(b) Election under applicable law and that timely makes the § 1111(b) Election (an "Electing Secured Creditor") shall not be entitled to any Class 10 General Unsecured Claim.  In that instance, the Electing Secured Creditor's proposed Class 10 General Unsecured Claim will be re-distributed to the other remaining Class 10 Claimholders, on a pro-rata basis, throughout the Plan Period.  Such Electing Secured Creditor will also not be entitled to a vote on its Class 10 General Unsecured Claim.

Furthermore, with regard to the secured claim of any Electing Secured Creditor, such secured claim shall be paid pursuant to the monthly payment schedule set forth in ¶ 3.01 above.  However, any secured claim to be paid over 360 months (or such other time period as agreed to by the Debtors and the Electing Secured Creditor) will not be amortized based on the value of the underlying property.  Instead, such payments shall represent payments of principal only.  At the conclusion of 360 monthly payments (or such other time period as agreed to by the Debtors and the Electing Secured Creditor), a balloon payment

---

[1] The administrative professional fees owing to the Debtors' attorneys consist of attorney's fees and costs that were incurred by Leiderman Shelomith, P.A. ("LS") from September 16, 2015 through May 31, 2016 and by Leiderman Shelomith Alexander + Somodevilla, PLLC ("LSAS") from June 1, 2016 through the date of confirmation.  Each payment referenced herein shall be paid on a pro rata basis between LS and LSAS, by virtue of the total amount of fees incurred by each law firm.

for the remaining amount of the Electing Secured Creditor's allowed claim shall be payable by the Debtors, in full satisfaction of the Electing Secured Creditor's allowed claim.

3.03    Default of Plan Payment(s).  Unless otherwise specifically set forth above, in the event of any default by the Debtors of any payment required by ¶ 3.01 above, the Claimant shall provide the Debtors with notice of such default, by electronic mail to the Debtors' attorney, Jonathan S. Leiderman, Esq. (at jsl@lsaslaw.com), and by facsimile transmittal (954-920-5371) (the "Default Notice").  The Debtors shall be afforded ten (10) days from the date of receipt by the Debtors' counsel of such Default Notice to cure such default.  The Claimant shall not take any further action(s) against the Debtors, including without limitation, proceeding against the Debtors in a court of competent jurisdiction, seeking *in rem* remedies against any of the subject properties described above or alleging a "material" default of this Plan by the Debtors, unless the cure period referenced herein has expired.

To the extent that any default by the Debtors (and failure to cure within the time frame referenced above) of any payment required by ¶ 3.01 above relates to a *secured* claim, and occurs during the Plan Period, then such Claimant's remedies are limited to any and all *in rem* remedies against the subject property (pursuant to the underlying loan documents), unless this case is dismissed.  To the extent that any default by the Debtors (and failure to cure within the time frame referenced above) of any payment required by ¶ 3.01 above relates to a *secured* claim, and occurs after the Plan Period, then such Claimant's remedies are limited to any and all *in rem* remedies against the subject property (pursuant to the underlying loan documents), as long as the Debtors ultimately receive a discharge.  Should the Debtors not receive a discharge, then such remedies shall not be limited and shall include any *in personam* rights against the Debtors pursuant to the underlying loan documents.

To the extent that any default by the Debtors (and failure to cure within the time frame referenced above) of any payment required by ¶ 3.01 above relates to an *unsecured* claim, then such Claimant may pursue whatever remedies are available pursuant to the underlying contract(s) or agreement(s) between the Claimant and the Debtors or pursuant to applicable law.  However, should the Debtors ultimately receive a discharge, then any such claims shall be discharged pursuant to the Bankruptcy Code.  This section shall not apply to any administrative professional claims owed by the Debtors.

## ARTICLE IV
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

4.01    Disputed Claim.  A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtors or another party in interest have filed an objection; or (ii) no proof of claim has been filed, and the Debtors have scheduled such claim as disputed, contingent, or unliquidated.

4.02    Delay of Distribution on a Disputed Claim.  No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

4.03   <u>Settlement of Disputed Claims</u>.   The Debtors will have the power and authority to settle and compromise a disputed claim with court approval and in compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## ARTICLE V
## PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

5.01   <u>Assumption of Executory Contracts and Unexpired Leases</u>.   The Debtors assume the following executory contracts and/or unexpired leases effective upon the Effective Date of this Plan:

| Name of Lessee | Property | Monthly Payment | Date Lease Expires |
|---|---|---|---|
| Mathurin Toussaint | 1272 NW 101 St, Miami, FL 33147-1849 | $900.00 | Month to Month |
| Camita Fleury | 1274 NW 101 St, Miami, FL 33147-1849 | $850.00 | Month to Month |
| Gertale Pierre | 763 NW 108 St, Miami, FL 33168-2129 | $800.00 | Month to Month |
| Guillaume Wilson | 765 NW 108 St, Miami, FL 33168-2129 | $800.00 | Month to Month |
| Luciene Aneluse | 767 NW 108 St, Miami, FL 33168-2129 | $900.00 | Month to Month |
| Linda Wright | 769 NW 108 St, Miami, FL 33168-2129 | $1,030.00 | Month to Month |
| Lonnie Whitly | 774 NW 108 St, Miami, FL 33168-2130 | $750.00 | Month to Month |
| Appolon Roseline | 776 NW 108 St, Miami, FL 33168-2130 | $900.00 | Month to Month |

5.02   <u>Rejection of Executory Contracts and Unexpired Leases</u>.   The Debtors will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly assumed above, or before the date of the order confirming this Plan, upon the Effective Date of this Plan.   A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than thirty (30) days after the date of the order confirming this Plan.

## ARTICLE VI
## MEANS FOR IMPLEMENTATION OF THE PLAN

The means necessary for the execution of this Plan include the following: (a) the Debtors' income through their company, 24/7 Bail Bonds LLC (gross income to the Debtors of approximately $2,500.00 per month for the 12 month period following the Effective Date); (b) the Debtors' income through their company, K N I Auto Sales LLC (gross income to the Debtors of approximately $2,500.00 per month for the 12 month period following the Effective Date); (c) the Debtors' income through their company, Isidore Corporation (gross income to the Debtors of approximately $6,000.00 per month for the 12 month period following the Effective Date; (d) rental income from the Debtors' investment real properties located at 1272-1274 NW 101 St, Miami, FL 33147-1849 (estimated rental income of $1,750.00 per month for the 12 month period following the Effective Date), 763-765 NW 108 St, Miami, FL 33168-2129 (estimated rental income of $1,600.00 per month for the 12 month period following the Effective Date), 767-769 NW 108 St, Miami, FL 33168-2129 (estimated rental income of $1,930.00 per month for the 12 month period following the Effective Date), and 774-776 NW 108 St, Miami, FL 33168-2130 (estimated rental income of $1,650.00 per month for the 12 month period following the Effective Date; and (e) the Debtors' income received from United Realty Group, Inc. (gross income to the Debtors of approximately $724.76 per month for the 12 month period following the Effective Date).

The Debtors' household net income is described in detail in the Debtors' Disclosure Statement, which is being circulated with this Plan.

The Debtors shall, and believe they can, generate sufficient income to make all payments due under this Plan. Attached to the Disclosure Statement is a 5 year cash flow projection, demonstrating that the Plan Payments are feasible. The estimated cash on hand necessary as of the Effective Date of this Plan is $20,500.00.

To the extent that the Debtors wish to prepay any amounts due under this Plan from exempt assets or other third party sources, the Debtors reserve the right to do so without penalty and to seek the entry of a final decree closing this case. In that case, the Plan Period, as defined above, shall be shortened to such time that the Debtors pay all administrative professional creditors and Class 1A, 1C, 3B, 4B, 5C, 6B, 6C, 7, 8, and 10 creditors all amounts due under this Plan.

The Debtors, as reorganized, will retain and will be re-vested in all property of the Estate, excepting property which is to be sold or otherwise disposed of as provided herein, executory contracts which are rejected pursuant to this Plan and property transferred to Creditors of the Debtors pursuant to the expressed terms hereof. The retained property shall be used by the Debtors in the ordinary course of their personal affairs. (Further details concerning the nature and scope of the Debtors' personal affairs may be found in the Disclosure Statement which accompanies this Plan).

## ARTICLE VII
## GENERAL PROVISIONS

7.01    Definitions and Rules of Construction.    The definitions and rules of construction set forth in 11 U.S.C. §§ 101 and 102 shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions:

(a)    Allowed Secured Claim - shall mean an Allowed Claim for which a Claimant asserts, or upon objection is determined by a Final Order to hold, a valid, perfected and enforceable lien, security interest or other interest or encumbrance in property in which the Debtors have an interest not subject to avoidance or subordination under the Bankruptcy Code or applicable non-bankruptcy law, or an Allowed Claim for which a Claimant asserts a setoff under 11 U.S.C. § 553, but in any event only to the extent of the value, determined in accordance with 11 U.S.C. § 506(a), of the Claimant's interest in the Debtors' interest in the property or to the extent of the amount subject to such setoff as the case may be.

(b)    Allowed Undersecured Claim - shall mean the amount of a prepetition secured Claim that exceeds the value of the collateral securing that Claim and is therefore unsecured.

(c)    Allowed Unsecured Claim - shall mean an Allowed Claim which arose or which is deemed to have arisen prior to the filing of the Petition commencing these Proceedings and as to which the Claimant has not asserted, or as to whom it is determined by Final Order does not hold, a valid, perfected and enforceable lien, security interest or other interest in or encumbrance against property of the Debtors or a right of setoff to

secure the payment of such Claim, but excluding unsecured Claims previously paid in the Proceedings pursuant to agreements approved by the Bankruptcy Court, if any.

Amount of Allowed Unsecured Claims.  The Debtors' scheduled undersecured and unsecured claims are set forth in their Schedules D, E, and F [ECF No. 31].  Attached hereto as Exhibit "A" is a list of all general unsecured dischargeable claims to be paid under this Plan, including the proposed distribution and proposed first dividend.  The aggregate amount of claims included in Class 10 is $630,336.72, subject to the provisions of ¶ 3.02 above.

Based upon the distribution amount of $85,886.00, holders of allowed dischargeable general unsecured claims will receive a distribution of 13.6254%.  This distribution is equal to what holders of allowed general unsecured claims would receive in a hypothetical Chapter 7, in which case the Debtors estimate that such claimants would receive a distribution of 13.6254%.

Liquidation analysis.  This estimated distribution in a hypothetical Chapter 7 was determined by analyzing the liquidation value of the Debtors' non-exempt property.  The Debtors' real properties are undersecured and have no equity.  The Debtors' non-exempt personal property is valued at $115,886.00, based on the values set forth in the Debtors' bankruptcy schedules and current funds being held in the Debtors' Debtors-in-Possession Account(s).  After deducting estimated Chapter 11 administrative expenses, as well as anticipated Chapter 7 administrative expenses, it was calculated that unsecured creditors would receive a total of $85,886.00 if this case were converted to a Chapter 7 liquidation.  A more detailed liquidation analysis is set forth in the Disclosure Statement that accompanies this Plan.

Accordingly, creditors are receiving the same amount by virtue of this Plan, then they would if the Debtors' case was a Chapter 7 proceeding.

(d)    *Causes of Action* - shall be used in its broadest sense and shall include all causes of action of the Debtors and all causes of action which a Trustee would have if the proceedings were converted on the confirmation date to a proceeding under Chapter 7 of the Code and a Trustee were appointed. Causes of action shall include all rights or causes of action, whether legal or equitable, whether they arise under the Code or under other federal or state laws or under judicial decisions, whether or not they are the subject of presently pending litigation and whether they arise before or after the confirmation date, as well as rights belonging to the Debtors pursuant to 11 U.S.C. §§ 506, 510, 544, 545, 547, 548, 549 or 550.

(e)    *Claim* - shall mean any right to payment against the Debtors or right to an equitable remedy against the Debtors for breach of performance if such breach gives rise to a right to payment, whether or not such right to payment or right to an equitable remedy is reduced to judgment, or whether liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, secured or unsecured.

(f)    *Petition Date* – shall mean September 16, 2015.

7.02    Effective Date of Plan. The Effective Date of this Plan is the fifteenth (15th) business day following the date of the entry of the order of confirmation.  However, if a stay

of the confirmation order is in effect on that date, the Effective Date will be the first business day after that date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

7.03    <u>Severability</u>.    If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

7.04    <u>Binding Effect</u>.    The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

7.05    <u>Captions</u>.    The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

7.06    <u>Controlling Effect</u>.    Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Florida govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

7.07    <u>Notice to Class 10 General Unsecured Creditors</u>.    Pursuant to 11 U.S.C. § 1129(a)(15), if you object to confirmation to the Plan, the value of the property to be distributed under the Plan shall not be less than the projected disposable income of the Debtors (as defined in 11 U.S.C. § 1325(b)(2)) to be received during the 5-year period beginning on the date that the first payment is due under the Plan (or during the period for which the Plan provides payments, whichever is longer).    Pursuant to the Plan, the value of the property to be distributed to Class 10 General Unsecured Creditors under the Plan ($85,886.00) is equal to the projected disposable income of the Debtors to be received during the 5-year period beginning on the Effective Date.

## ARTICLE VIII
## <u>DISCHARGE</u>

Confirmation of this Plan does not discharge any debt provided for in this Plan until the Court grants a discharge on completion of all payments under this Plan, or as otherwise provided in 11 U.S.C. § 1141(d)(5).    The Debtors will not be discharged from any debt excepted from discharge under 11 U.S.C. § 523, except as provided in Fed. R. Bankr. P. Rule 4007(c).

## ARTICLE IX
## <u>EFFECT OF CONFIRMATION</u>

9.01    <u>Vesting of Assets</u>.    Except as otherwise set forth herein or in the Confirmation Order, as of the Effective Date, the property of the Estate shall vest in the Debtors free and clear of all claims, liens, encumbrances, charges and other interests, except those specifically set forth and identified in this Plan.

9.02    <u>Binding Effect</u>.    Except as otherwise provided in 11 U.S.C. § 1141(d)(3), on and after the Confirmation Date, the provisions of the Plan shall bind any holder of a claim against the Debtors and their respective successors and assigns, whether or not the claim

of such holder is impaired under the Plan and whether or not such holder has accepted the Plan.

9.03    Injunction Against Interference with Plan.  Upon the entry of the Confirmation Order, all holders of claims and other parties in interest, along with their respective present or former employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

9.04    Other Effect(s) of Confirmation.  If not otherwise identified herein, then the effect of confirmation of the Plan is as set forth in the Bankruptcy Code and applicable law.

## ARTICLE X
## OTHER PROVISIONS

10.01    Reservation of Rights Under 11 U.S.C. § 1129(b).  The Debtors expressly reserve the right, pursuant to 11 U.S.C. § 1129(b), to request the Court to confirm this Plan if all of the applicable requirements of 11 U.S.C. § 1129 (a) have been met, other than those of 11 U.S.C. § 1129(a)(8).

10.02    Reservation of Right to Modify Plan Post-Confirmation.    The Debtors expressly reserve the right to request a modification of this Plan at any time after confirmation of the Plan but before the completion of payments under the Plan, to (1) increase or reduce the amount of payments under the Plan on claims of a particular class, (2) extend or reduce the time period for such payments, or (3) alter the amount of distribution to a creditor whose claim is provided for by the Plan to the extent necessary to take account of any payment of the claim made other than under the Plan.  Any such request to modify this Plan shall be noticed to all creditors and interested parties, and no modification shall be granted absent proper notice and hearing.

10.03    Reservation of Rights Under Sections 1141(d)(5) and 350(a).  The Debtors reserve the right, after confirmation, to seek the closing of this bankruptcy proceeding prior to the entry of an Order of Discharge, upon the payment of the initial payment(s) under this Plan, payment of all outstanding quarterly United States Trustees Fees, and the filing of any outstanding federal income tax returns.  Such a request may be granted only upon notice and hearing, with notice to all creditors and interested parties.  If such request is granted, then upon the satisfaction of all payments required to be paid to 1A, 1C, 3B, 4B, 5C, 6B, 6C, 7, 8, and 10 creditors, the Debtors may file a motion to reopen this bankruptcy proceeding, pursuant to 11 U.S.C. § 350(b), and the Court may then grant the Debtors a discharge, pursuant to 11 U.S.C. § 1141(d)(5).  This paragraph only preserves the Debtors' right to seek the relief described above and does not conclusively grant such relief. Creditors' and interested parties' rights to object to such relief shall similarly be preserved until such time as it is requested by the Debtors after confirmation.

10.04    Disbursing Agent.  All distributions hereunder shall be made by the Debtors, or such other individual or entity designated by the Debtors at the Confirmation Hearing, as Disbursing Agent, on or after the Effective Date or as otherwise provided herein.   A Disbursing Agent shall not be required to give any bond, surety, or other security for the performance of his/her/its duties unless otherwise ordered by the Bankruptcy Court, and, in the event that a Disbursing Agent is so ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Debtors.

10.05  <u>Post-Petition Interest on Claims</u>.    Except as required by applicable bankruptcy law, post-petition interest will not accrue on or after the Effective Date on account of any Claim.

10.06  <u>Delivery of Distributions and Undeliverable or Returned Distributions</u>.  Subject to Fed. R. Bank. P. 9010, all distributions to any holder of an Allowed Claim shall be made at the address of such holder as set forth on the Schedules filed with the Bankruptcy Court, or on the books and records of the Debtors or their agents, or in a letter of transmittal, unless the Debtors have been notified in writing of a change of address, including, without limitation, by the filing of a Proof of Claim by such holder that contains an address for such holder different from the address reflected on such Schedules for such holder.  In the event that any distribution to any holder is returned as an "Undeliverable or Returned Distribution", then no further distributions to such holder shall be made unless and until the Debtors are notified of such holder's then-current address, at which time all missed distributions shall be made to such holder, without interest.  An "Undeliverable or Returned Distribution" shall include such distributions that are: (a) undeliverable through regular United States Mail, whether such distribution is returned to the Debtors or not; (b) returned to the Debtors because the Claimant cannot locate an account number belonging to the Debtors, despite the Debtors' reasonable diligence in providing the Claimant with the bankruptcy case number, account number, and their social security number; (c) returned to the Debtors because the Claimant is no longer operating and has not provided the Debtors or the Court with any assignment information; or (d) returned to the Debtors because the Claimant indicates in writing that the Claimant does not wish to receive any distribution under this Plan and therefore waives any right to payment.

All demands for Undeliverable or Returned Distributions shall be made on or before ninety (90) days after the date such Undeliverable or Returned Distribution was initially made.  Thereafter, the amount represented by such Undeliverable or Returned Distribution shall be donated by the Debtors to the Bankruptcy Bar Foundation of the Southern District of Florida, Inc., a legal non-profit organization that funds the pro bono activities of the Bankruptcy Bar Association for the Southern District of Florida.  At such time, any Claim in respect of such Undeliverable or Returned Distribution shall be discharged and forever barred from assertion against the Debtors and their property.

10.07  <u>Time Bar to Cash Payments</u>.  Checks issued by the Debtors in respect of Allowed Claims shall be null and void if not negotiated within one hundred and eighty (180) days after the date of issuance thereof.  Requests for re-issuance of any check shall be made to the Debtors by the holder of the Allowed Claim to whom such check originally was issued.  Any Claim in respect of such a voided check shall be made on or before thirty (30) days after the expiration of the one hundred and eighty (180) day period following the date of issuance of such check.  Thereafter, the amount represented by such voided check shall be donated by the Debtors to the Bankruptcy Bar Foundation of the Southern District of Florida, Inc., a legal non-profit organization that funds the pro bono activities of the Bankruptcy Bar Association for the Southern District of Florida.  At such time, any Claim in respect of such voided check shall be discharged and forever barred.

This Plan of Reorganization is dated July 17, 2017, and is hereby approved by the undersigned.

Case No. 15-26604-BKC-JKO
Page 20 of 21

_____
Kanol Isidore

_____
Katia Isidore

Leiderman Shelomith Alexander + Somodevilla, PLLC
Miami | Fort Lauderdale

Submitted by:

**Jonathan S. Leiderman, Esq.**
**Florida Bar No.: 0029022**
**Leiderman Shelomith Alexander**
**+ Somodevilla, PLLC**
2699 Stirling Rd # C401
Fort Lauderdale, FL 33312
Tel. No.: 954-920-5355
Fax No.: 954-920-5371
E-Mail: jsl@lsaslaw.com
*Attorneys for the Debtors*

Kanol Isidore and Katia Isidore - List of General Unsecured Creditors to be Paid Pursuant to Plan

**Class 10 Unsecured Creditors:**

| Class | Claim # | Name of Creditor | Amount of Claim | Proposed Distribution | Initial Payment | Quarterly Payments | Comments |
|---|---|---|---|---|---|---|---|
| 10 | 1 | Unifund CCR, as Assignee of Pilot Receivables Management, LLC, as Asignee of Pride Acquisition, LLC, as Assignee of Chase Bank USA NA | $29,030.68 | $3,955.57 | $0.00 | $197.78 | Unsecured claim - Acct # 6091 |
| 10 | 2 | Wells Fargo Bank | $315.13 | $42.95 | $42.95 | $0.00 | Unsecured claim - Acct # 1395 |
| 10 | 4 | Florida Community Bank, N.A. | $40,493.06 | $5,517.35 | $0.00 | $275.87 | Unsecured claim - Acct # 3308 |
| 4A/10 | 5 | BankUnited, N.A. | $33,676.30 | $4,588.54 | $0.00 | $229.43 | Unsec. portion of first mortgage on 763-765 NW 108 St, Miami, FL 33168-2129 (Total Claim: $183,676.30) [ECF # 136] |
| 1A/10 | 6 | Internal Revenue Service | $19,662.47 | $2,679.10 | $0.00 | $133.95 | Unsecured claim - Acct # 1395 |
| 5B/10 | 7 | BankUnited, N.A. | $169,627.26 | $23,112.40 | $0.00 | $1,155.62 | Unsec. portion of home equity line of credit on 767-769 NW 108 St, Miami, FL 33168-2129 (Total Claim: $195,941.26) [ECF # 80] |
| 6A/10 | 10 | Wells Fargo Bank, N.A. | $142,002.18 | $19,348.37 | $0.00 | $967.42 | Unsec. portion of home equity line of credit on 774-776 NW 108 St, Miami, FL 33168-2130 (Total Claim: $259,617.18) [ECF # 82] |
| 3A/10 | 11 | McCormick 106, LLC | $175,604.27 | $23,926.79 | $0.00 | $1,196.34 | Unsec. portion of first mortgage on 1272-1274 NW 101 St, Miami, FL 33147-1849 (Total Claim: $335,604.27) [ECF # 134] |
| 8/10 | 13 | Santander Consumer USA Inc. | $11,790.83 | $1,605.56 | $0.00 | $80.33 | Unsec. portion of lien on 2007 Toyota FJ Cruiser-V6 Utility 4D 4WD (Total Claim: $19,790.83) [ECF # 81] |
| 7/10 | 14 | Santander Consumer USA Inc. | $8,134.54 | $1,108.37 | $0.00 | $55.42 | Unsec. Portion of lien on 2014 Toyota Tacoma Double Cab PreRunner 2WD V6 (Total Claim: $23,134.54) [ECF # 79] |
| | | **Total Undisputed Unsecured Claims** | $630,336.72 | $85,886.00 | $42.95 | $4,292.16 | |
| | | **Distribution Percentage** | 13.6254% | | | | |

**Disposition of Other Claims Not Listed Above:**

| Class | Claim # | Name of Creditor | Amount of Claim | Proposed Disposition |
|---|---|---|---|---|
| 3B | 3 | Miami-Dade County Tax Collector | $3,465.92 | Secured creditor treated in Class 3B - payments in Plan (2015 real estate taxes on 1272-1274 NW 101 St, Miami, FL 33147-1849) |
| 4B | 3 | Miami-Dade County Tax Collector | $2,935.97 | Secured creditor treated in Class 4B - payments in Plan (2015 real estate taxes on 763-765 NW 108 St, Miami, FL 33168-2129) |
| 5C | 3 | Miami-Dade County Tax Collector | $3,069.38 | Secured creditor treated in Class 5C - payments in Plan (2015 real estate taxes on 767-769 NW 108 St, Miami, FL 33168-2129) |
| 6C | 3 | Miami-Dade County Tax Collector | $2,770.24 | Secured creditor treated in Class 6C - payments in Plan (2015 real estate taxes on 774-776 NW 108 St, Miami, FL 33168-2130) |
| N/A | 3 | Miami-Dade County Tax Collector | $1,601.87 | Debtors will be objecting to this claim since Debtors did not own the property located at 888 NW 117 St on the petition date |
| N/A | 3 | Miami-Dade County Tax Collector | $3,120.74 | Debtors will be objecting to this claim since Debtors did not own the property located at 1354 NE 110 St on the petition date |
| 4A | 5 | BankUnited, N.A. | $150,000.00 | Secured creditor treated in Class 4A - payments in Plan (763-765 NW 108 St, Miami, FL 33168-2129) |
| 1A | 6 | Internal Revenue Service | $43,996.54 | Unsecured priority creditor treated in Class 1A - payments in Plan (2011-2014 taxes) |
| 5B | 7 | BankUnited, N.A. | $26,314.00 | Secured creditor treated in Class 5B - payments in Plan (767-769 NW 108 St, Miami, FL 33168-2120) |
| 9 | 8 | US Department of Education | $36,692.13 | Unsecured general non-dischargeable claim treated in Class 9 (student loans) |
| 2A | 9 | Wells Fargo Bank, N.A. | $872,519.64 | Secured creditor treated in Class 2A (4100 Triple Crown Ct, Davie, FL 33330) |
| 6A | 10 | Wells Fargo Bank, N.A. | $117,615.00 | Secured creditor treated in Class 6A - payment sin Plan (774-776 NW 108 St, Miami, FL 33168-2130) |
| 3A | 11 | McCormick 106, LLC | $160,000.00 | Secured creditor treated in Class 3A - payments in Plan (1272-1274 NW 101 St, Miami, FL 33147-1849) |
| 5A | 12 | Bank of America, N.A. | $125,175.21 | Secured creditor treated in Class 5A - payments in Plan (767-769 NW 108 St, Miami, FL 33168-2129) |
| 8 | 13 | Santander Consumer USA Inc. | $8,000.00 | Secured creditor treated in Class 8 - payments in Plan (2007 Toyota FJ Cruiser-V6 Utility 4D 4WD) |
| 7 | 14 | Santander Consumer USA Inc. | $15,000.00 | Secured creditor treated in Class 7 - payments in Plan (2014 Toyota Tacoma Double Cab PreRunner 2WD V6) |
| 6B | SCH | TLGFY LLC | $3,218.88 | Secured creditor treated in Class 6C - payments in Plan (2014 real estate taxes on 774-776 NW 108 St, Miami, FL 33168-2130) |

Note: Any disputed, contingent, or unliquidated scheduled creditors (or scheduled creditors with a claim of "$0.00" or "unknown") that did not file a claim by the deadline date to file claims are not listed in this spreadsheet, and are being taken off the case as creditors, pursuant to Fed. R. Bankr. P. 3003(c)(2).